**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Rachel Lieber, individually and on behalf of all others similarly situated** ) ) ) ) | | **CASE NO. 1:16 CV 2868** |
| **Plaintiff,** ) ) | | **JUDGE PATRICIA A. GAUGHAN** |
| **vs.** ) ) | | |
| **Wells Fargo Bank, N.A.** ) ) | | **Memorandum of Opinion and Order** |
| **Defendant.** ) | | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion to Compel Defendant's Responses to Plaintiff's Discovery Requests and to Extend the Non-Expert Discovery Deadline ("Plaintiff's first motion") (Doc. 25) and Plaintiff's Second Motion to Compel Defendant's Responses to Plaintiff's Discovery Requests and to Redepose Defendant's Corporate Representative ("Plaintiff's second motion") (Doc. 36). For the reasons that follow, Plaintiff's first motion is GRANTED IN PART AND DENIED IN PART, and Plaintiff's second motion is DENIED.

**BACKGROUND**

Plaintiff, Rachel Lieber, brought this putative class action against Defendant Wells Fargo Bank, N.A., pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* Defendant is the current servicer of Plaintiff's and the putative class members' notes and mortgages on real property that secure those notes. (Am. Compl. ¶ 17). Plaintiff alleges that Defendant violated RESPA and the regulation promulgated by the Consumer Financial Protection Bureau regarding the interpretation of RESPA, known as Regulation X, when Defendant failed to respond to Plaintiff's and the class members' "qualified written requests" ("QWRs"), as defined by 12 U.S.C. § 2605(e)(1)(B). Plaintiff's and the putative class members' QWRs were in the form of Requests for Information ("RFIs") and Notices of Error ("NOEs"). 12 C.F.R. § 1024.35(a), 1024.36(a). Specifically, Plaintiff alleges that Defendant inappropriately relied on a blanket "active litigation" exception to its obligation to respond to Plaintiff's and the class's QWRs, when RESPA and Regulation X do not permit such an exception.

To establish her RESPA claim, Plaintiff will have to prove that the loans at issue were "federally related mortgage loans,"[1] that the QWR was in writing and contained sufficient information to enable the servicer to identify the name of the borrower and the account number, and that the QWR involved an inquiry related to the "servicing" of a loan. 12 U.S.C. § 2605(e)(1). The "servicing" of a loan is defined as "receiving any scheduled periodic payments

---

[1] A federally related mortgage loan is one that (1) involves a 1-4 unit residential property and (2) was made by a federally insured institution, guaranteed or insured by a federal agency, sold or intended to be sold to a federally related entity, or made by a creditor who has made a large number of residential loans. 12 U.S.C. § 2602(1); 12 U.S.C. § 2605(e).

from a borrower pursuant to the terms of any loan, including amounts for escrow accounts." 12 U.S.C. § 2605(i)(3).

Throughout the period of non-expert discovery as to class certification,[2] the parties had several disagreements as to the sufficiency of Defendant's responses to Plaintiff's discovery requests. The parties attempted to resolve their disputes without court intervention, but a number of disputes remain. Now pending before the Court are Plaintiff's two motions to compel, which Defendant opposes.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 26(b)(1) sets forth the permissible scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). After making a good faith attempt to resolve a dispute, a party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure if it believes another party has failed to respond to discovery requests or that the party's responses are evasive or incomplete. Fed. R. Civ. P. 37(a). In ruling on such a motion, a trial court has broad discretion in determining the scope of discovery. *Lewis*, 135 F.3d at 402.

---

[2] Non-expert discovery as to class certification was originally scheduled to end on May 15, 2017, but the Court extended the deadline to July 15, 2017.

3

**ANALYSIS**

**A. Document Requests 12-15**

Plaintiff first argues that Defendant's responses to her Document Requests 12-15 were inadequate. In these requests, Plaintiff sought:

> 12. All Information Requests sent to Defendant by any Borrower to which Defendant provided, on or after November 15, 2013, a Pending Litigation Response.
> 13. All Pending Litigation Responses sent, on or after November 15, 2013, by Defendant in response to any Borrower's Information Request.
> 14. All Error Notifications sent to Defendant by any Borrower to which Defendant provided, on or after November 15, 2013, a Pending Litigation Response.
> 15. All Pending Litigation Responses sent, on or after November 15, 2013, by Defendant in response to any Borrower's Error Notification.

Defendant objected to the requests on the grounds that they were overly broad, unduly burdensome, and sought information that is, at least in part, not relevant to the claims or defenses of the parties. Nevertheless, it agreed to provide a sample of the requested documents. It identified "19,877 cases where its Customer Care and Recovery Group ('CCRG') had responded to correspondence at a time when the account had been coded as being in active litigation." It then narrowed this group to cases arising in Ohio, Illinois, Minnesota, and Michigan that involved correspondence sent to an individual (as opposed to a governmental agency) stating that the matter involved "pending litigation or mediation within pending litigation." On June 8, 2017, Defendant produced files from 137 such cases, but redacted the names, account numbers, addresses, court case information, and counsel information to protect the financial privacy of its customers. (*See* Doc. 26) (citing 15 U.S.C. § 6801, the Gramm-Leach-Bliley Act (the "GLBA"), which prohibits financial institutions from releasing "nonpublic personal information" of its customers). In response to Plaintiff's concerns, Defendant offered to stipulate that each of the

5

borrowers' letters contained sufficient information for Defendant to identify the borrowers' names and account numbers so that it could identify the loan and prepare the response. It also provided Plaintiff a chart that identifies which "active litigation" letter relates to which customer.

Plaintiff argues that Defendant's reliance on the GLBA is misplaced because the Act does not prohibit the disclosure of non-public personal information regarding its customers when such disclosure is in response to a discovery request in civil litigation. She argues that Defendant's response is deficient because the redactions "make it impossible" to determine whether Defendant provided the information requested or corrected the error being asserted by a given customer. She also complains that Defendant will not provide documentation to establish whether the potential class members' loans were federally related and states that she could independently determine if they were federally related if Defendant provided the customers' identities.[3] Finally, she asserts that she has "no way of verifying whether [the active litigation exception was appropriate] without being able to locate court records using potential Class members' identities."

The GLBA's restrictions against disclosure do not apply when a financial institution releases information regarding its customers in order "to respond to judicial process." 15 U.S.C. § 6802(e)(8). Courts have construed the judicial process exception to mean that the Act does not prevent disclosure to a third party in response to a discovery request in civil litigation. *See MAS*,

---

[3]   Defendant argues that Plaintiff's need for the identities of its customers to determine if the loans are federally related proves that this case is not appropriate for class treatment because it shows that the Court will have to make a series of individual inquiries for each putative class member. As Defendant recognizes, however, whether this case is suitable for class action"is...beside the point" for purposes of Plaintiff's motion to compel. (*See* Doc. 26, at 11).

*Inc. v. Nocheck, LLC*, 2011 WL 1135367, at *4 (E.D. Mich. Mar. 28, 2011) (citing *Marks v. Global Mort. Group, Inc.*, 218 F.R.D. 492, 495 (S.D.W. Va. 2003)); *Her v. Regions Fin. Corp.*, 2007 WL 2806558, at * 2 (W.D. Ark. Sep. 25, 2007) (finding that both the judicial process exception and the exception for disclosure "to persons acting in a fiduciary or representative capacity on behalf of the consumer" applied because plaintiff's counsel was acting in a fiduciary capacity with respect to putative class members). Moreover, the Court notes that a protective order has already been entered in this case that will protect the privacy of the disclosed nonpublic personal information. Thus, the disclosure of Defendant's customers' nonpublic personal information–which Defendant states is the only information that it has redacted–is discoverable and must be produced. (*See* Doc. 26, at 9). This portion of Plaintiff's first motion to compel is, therefore, granted.

### B. Request for Admission No. 13

Request for Admission No. 13 asks Defendant to admit that "the accounts of Ohio Savings Bank (designated as the 'lender' in Plaintiff's Note and Plaintiff's Mortgage) were insured by the Federal Deposit Insurance Corporation." Defendant responded by stating that, "after a reasonable investigation into readily available sources of information, [it] was unable to confirm the truth of this Request and, therefore, it is denied." Plaintiff argues that Defendant should be deemed to have admitted Request for Admission No. 13 because the FDIC's website contains information stating that it insures Ohio Savings Bank.

According to Federal Rule of Civil Procedure 36(a)(4), an answering party "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is

insufficient to enable it to admit or deny." Generally, courts are in agreement that a "reasonable inquiry" is limited to review and inquiry of those persons and documents that are within the responding party's control. *Piskura v. Taser Intern.*, 2011 WL 6130814, at * 4 (S.D. Ohio Nov. 7, 2011) (citing *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997)). A "[r]easonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, ... who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response. In this connection, relevant documents and regulations must be reviewed as well." *Id.* (quoting *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992)).

Defendant states that it was unable to confirm the truth of the requested admission by investigating materials and information within its control. It did not have a duty to go on the FDIC website to verify the status of Ohio Savings Bank. Moreover, as Defendant notes, Plaintiff can prove the bank's FDIC-insured status with a printout from a government website. She does not need an admission to establish this fact. This portion of Plaintiff's first motion to compel is, therefore, denied.

**C. Interrogatory 19**

Next, Plaintiff complains that Defendant's response to Interrogatory 19 was inadequate. In this discovery request, Plaintiff asked Defendant to identify the dates that it first provided Plaintiff with a variety of information in response to her RFI. She then listed 11 categories of information. Defendant responded to the first five categories but objected to the remaining on the basis that Plaintiff had exceeded her allotted 25 written interrogatories, including all discrete subparts. It also objected to several categories as being irrelevant or vague.

8

Defendant's objection that Plaintiff exceeded her allotted interrogatories is not well-taken. Rule 33 allows parties to serve 25 interrogatories, including all discrete subparts, upon another party but must secure leave of court to serve a larger number. Subparts to an interrogatory should be counted as one interrogatory when they are "necessarily related to the 'primary question.'" *Harhara v. Norville*, 2007 WL 2897845, at *1 (E.D. Mich. Sep. 25, 2007). "[A]n interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question." *Id.* (citing Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Number of Interrogatories*, Federal Practice and Procedure § 2168.1 (2d ed. 1994). On review, the Court finds that the subparts to Interrogatory 19 are sufficiently factually and logically related to the primary question such that they are subsumed by the primary question. As such, they will be treated as one interrogatory.

Defendant also argues that Interrogatories (f)-(i) (asking for broker price opinions, the location of the original note, a true and accurate copy of the original note, and the identity and address of the custodian of the collateral file) are irrelevant because none of the inquiries seek information relating to "servicing" of Plaintiff's loan. Plaintiff responds that the information is relevant to Defendant's policies and procedures in responding to correspondence from borrowers. She argues that Defendant's responses "could provide an important distinction between which inquiries it determined to be related to servicing, and which it did not. To demonstrate, Defendant's own prior actions would support a finding that a particular borrower's inquiry related to servicing–and Defendant may be estopped from arguing otherwise." Given the broad scope of discovery, the Court finds that these requests are sufficiently relevant to Plaintiff's claim that Defendant failed to provide an adequate response to her RFI's. Thus, this

9

portion of Plaintiff's first motion to compel is granted.

Defendant has already provided the information sought in Interrogatories 19(j) and (k). Thus, this portion of Plaintiff's first motion to compel is denied.

**D. Request for extension of non-expert deadline**

Plaintiff asks for a 90-day extension of the non-expert deadline. She asserts that such an extension is warranted because she has been diligent in reviewing the provided discovery and has attempted to resolve several disputes without Court intervention. According to her, she was unable to complete non-expert discovery because of the delays caused by these attempts to resolve the disputes. She states that an extension of the non-expert fact discovery "would permit [her] to engage in more targeted follow-up discovery." The additional discovery that she would seek "would include additional requests for the production of documents and depositions of Defendant's employees." (Doc. 25, at 8). She would "request additional documentation relative to customers that sent correspondence to Defendant, to which Defendant responded by asserting the 'active litigation' exception at issue in this case–i.e., potential Class members." She claims that "[t]his additional discovery is necessary to ascertain whether those communications satisfy RESPA's definition requirements.... For example, additional discovery will be necessary to establish that these potential Class members' mortgages were 'federally related mortgage' loans..., that Defendant was engaged in 'servicing' relative to those mortgages..., and the dates, if any, on which Defendant responded to those potential Class members." Plaintiff also wants to take depositions of Defendant's employees who received and responded to QWRs, RFIs, and NOEs sent by Plaintiff and potential class members and who created, modified, or implemented Defendant's policy of asserting the "active litigation" exception at issue in this case.

Plaintiff has not shown that extension of the discovery deadline–which was already extended once–is warranted. She submitted the document requests that are the basis of her first motion to compel on May 9, 2017, and Defendant responded on June 8, 2017. Defendant addressed and resolved each of Plaintiff's complaints with respect to its responses other than her complaint that it should not have redacted its customers' non-public personal information. Although the Court has ordered Defendant to produce the unredacted version of its responses, this does not open the door to Plaintiff engaging in the extensive new discovery she claims she needs. Plaintiff simply has not shown why the redaction of the customers' identities made it impossible for her to seek this information during the discovery period. Indeed, on the last day of non-expert discovery, Plaintiff served additional requests for admission and document requests, seeking the mortgages, servicing files, pleadings, and materials from the underlying litigation for all of the customers that Defendant included in the sample that it provided Plaintiff. She has not explained why she could not have submitted these requests in a timely fashion. Moreover, according to Plaintiff, she can "independently determine" if potential class members' mortgages were federally related mortgage loans if she has their identities. Finally, despite Plaintiff's belated 30(b)(6) deposition notice, filed on the day before non-expert discovery closed, Defendant made Chris Short available to testify as a corporate representative on August 9. Thus, there is no reason for Plaintiff to engage in additional requests for the production of documents and depositions of Defendant's employees.

Plaintiff filed a supplement to her first motion to compel, arguing that she learned in Short's deposition that Defendant's internal computer software runs on a SQL database. According to Plaintiff, a SQL database is a computerized database that utilizes uniform fields,

11

language, and commands to store, search, and recall information. Plaintiff claims that in April, Defendant's counsel had indicated that Defendant's software did not allow for a computerized search using field codes. According to Plaintiff, if she had known that Defendant's database was searchable using field codes, she could have modified her document requests to request only correspondence between Defendant and customers who met the Class definition. As a result, she argues that the delays in the production of documents relevant to class certification could have been avoided, justifying her request for a 90-day extension.

The Court does not agree. Defendant states that codes cannot be used to identify who received an "active litigation" letter–i.e., potential class members–and that, in fact, it had to manually review files to produce the sample that it disclosed. Moreover, while Short testified that he believed Defendant's computer system runs on an SQL database, Plaintiff's counsel never asked Short during the deposition if litigation codes and response codes could be used to identify loans in which an "active litigation" letter was sent.

Thus, Plaintiff's request for a 90-day extension of the non-expert discovery is denied.

**E. Requests for Production Nos. 4 and 11**

In Request for Production No. 4, Plaintiff sought "all documents...related to" Defendant's policy of sending the "active litigation" letters at issue in this case. Request for Production 11 sought "all...documents...relating to Defendant's responses to RFIs and NOEs to which Defendant responded by asserting an 'active litigation' or 'litigation' exception." Defendant raised several objections but, on March 30, 2017, produced "the policy followed by Wells Fargo's Customer Care Recovery Group ["CCRG"] when responding to borrowers who communicate with Wells Fargo when they are engaged in litigation against Wells Fargo (the

"Litigation Policy"). After Defendant produced the Litigation Policy, Plaintiff stated that she wanted all supplements, amendments, and correspondence concerning supplements or amendments to the Litigation Policy. Defendant provided supplemental responses, which included revision histories and prior versions of the Litigation Policy.

During Short's deposition on August 9, Plaintiff's counsel showed him a page from the Litigation Policy that states "for more information regarding required response items and whether we need to address them, refer to the Real Estate Settlement Procedures Act Guidelines procedure ["RESPA Guidelines"]." (Litigation Procedure, at 13). Short testified that he did not know whether the RESPA Guidelines had been produced. He described the Guidelines as a "style guide and how we communicate, tone, empathy, so on and so forth. So it's not only a guide to ensure that we're always providing the requested information, but it's also like a style guide." (Short Dep. at 131).

In her second motion to compel, Plaintiff argues that Defendant should have provided the RESPA Guidelines in response to Document Requests 4 and 11. Plaintiff's motion is untimely. Local Rule 16.1(b)(6) states that, to be timely, a written request must be served to allow a time for response prior to discovery cutoff. Despite a clear reference to the RESPA Guidelines in the Litigation Procedure, Plaintiff did not specifically request them until Short's deposition, after the discovery cutoff. In addition, Local Rule 37.1(b) states that "[n]o discovery dispute shall be brought to the attention of the court, and no motion to compel may be filed, more than ten (10) days after the discovery cut-off date." Here, not only did Plaintiff file her second motion to compel more than ten days beyond the discovery cut-off of July 15, 2017, she filed it more than ten days after Short's deposition, the date she claims she clearly became aware that the

Guidelines existed. Although the Court's August 23, 2017 order allowed Plaintiff to file a second motion to compel, in no way did the order indicate that Plaintiff would be exempt from the timing requirements of the Local Rules. Thus, this portion of Plaintiff's second motion to compel is denied.

**F. Plaintiff's request to redepose Defendant's corporate representative**

Finally, Plaintiff complains that Defendant's corporate representative, Chris Short, was unable to testify as to several topics set forth in her 30(b)(6) notice. Specifically, she claims that Short was unprepared to testify as to the meaning of several field codes identified on printouts from Defendant's computer system, as well as the number of customer inquiries Defendant received on a daily basis, how often Defendant receives customer inquiries that are clearly unrelated to "servicing," and if an "investor ID" code is assigned to every loan in Defendant's computer system.

On review of Short's deposition transcript, the Court finds that he was sufficiently prepared to testify as to the topics at issue. A 30(b)(6) deponent "is not expected to perform with absolute perfection." *QBE Ins. Corp. v. Jorda Enters., Inc.* 277 F.R.D. 676, 691 (S.D. Fla. 2012) (citation omitted); *see also Pogue v. Northwestern Mut. Life Ins. Co.*, 2017 WL 3044763 (W. D. Ky. July 18, 2017) ("'[T]he inability of a designee to answer every question on a particular topic does not necessarily mean that the corporation has failed to comply with its obligations under the Rule.'") (citation omitted). Short provided extensive testimony on Defendant's operations, policies, and procedures regarding the receipt, review, evaluation, and investigation of correspondence from its customers. He explained how CCRG processes correspondence with customers, including how CCRG personnel input information into the computer system. He

described the menus in the system, and how codes and information were entered. Although he may not have testified with "absolute perfection," the few times he was unable to answer a question do not warrant allowing Plaintiff to take another 30(b)(6) deposition. Thus, this portion of Plaintiff's second motion to compel is denied.

Plaintiff states that Defendant's counsel provided the meaning of some of the missing field codes in an email to Plaintiff's counsel, but she states that she has concerns as to the sufficiency of the response because it was not provided under oath. Defendant must produce a verified list of these codes by September 15, 2017.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Compel Defendant's Responses to Plaintiff's Discovery Requests and to Extend the Non-Expert Discovery Deadline (Doc. 25) is GRANTED IN PART AND DENIED IN PART, and Plaintiff's Second Motion to Compel Defendant's Responses to Plaintiff's Discovery Requests and to Redepose Defendant's Corporate Representative (Doc. 36) is DENIED. Defendant is ordered to supplement its discovery responses consistent with the foregoing by September 15, 2017. Plaintiff's request for sanctions is denied as Defendant's responses and objections were substantially justified. Plaintiff's Amended Motion for Class Certification and her brief in opposition to Defendant's Motion to Strike Class Allegations are due on October 2, 2017.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Dated: 9/7/17        Chief Judge