## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **RACHEL LIEBER,** individually, and on behalf of all others similarly situated, | ) | |
| | ) | CASE NO.    16-cv-02868-PAG |
| Plaintiff, | ) | |
| | ) | Judge Patricia A. Gaughan |
| vs. | ) | |
| | ) | Magistrate Judge Jonathan D. Greenberg |
| **WELLS FARGO BANK, NA,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPRESENTATIVE PLAINTIFF'S MOTION FOR AN
## AWARD OF ATTORNEYS' FEES AND SERVICE AWARD

Thomas A. Zimmerman, Jr.
(admitted *pro hac vice*)
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020

Marc E. Dann 0039425
William C. Behrens 0093031
The Dann Law Firm Co., LPA
P.O. Box. 6031040
Cleveland, Ohio 44103
(216) 373-0539

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

I.     THE COURT SHOULD AWARD CLASS COUNSEL $210,000 AS
     REASONABLE ATTORNEY'S FEES AND LITIGATION EXPENSES. ....................1

     A.    Payment of $7,254.58 in Litigation Expenses to Class Counsel is
         Appropriate and Warranted. .....................................................................2

     B.    The Court Engages in a Two-Part Test When Assessing the Reasonableness
         of a Fee Petition. .....................................................................................3

     C.    It is Reasonable and Appropriate to Award Attorneys' Fees Independently
         from the Common Fund Based on the Lodestar Method. ..................................4

     D.    The Requested Fee is Especially Reasonable Because It Utilizes a Negative
         Multiplier. .............................................................................................7

     E.    The Benefits to Settlement Class Members are the Result of Class
         Counsel's Vigorous Litigation of this Case. ...............................................9

     F.    The *Ramey* Factors Support Awarding the Requested Fee ...............................10

         1.    The Settlement Provides Significant Benefits to the Settlement
              Class. ...........................................................................................11

         2.    The Societal Interest Supports Rewarding Class Counsel. ....................14

         3.    The Services of Plaintiffs' Counsel Were Undertaken on a
              Contingent Fee Basis. .....................................................................16

         4.    The Value of the Services on an Hourly Basis Support Awarding
              the Requested Fee. ..........................................................................17

          5.    The Litigation is Significantly Complex. ...........................................17

          6.    The Professional Skill and Standing of All Counsel Supports
              Awarding Class Counsel the Requested Fee. .......................................19

II.    PAYMENT OF $7,500 AS A SERVICE AWARD TO THE REPRESENTATIVE
    PLAINTIFF IS APPROPRIATE AND WARRANTED. ......................................20

CONCLUSION ......................................................................................................23

## TABLE OF AUTHORITIES

### Cases

*Blank v. Talley Industries, Inc.*
   64 F.R.D. 125 (S.D. N.Y. 1974) ..................................................................................... 19

*Bogosian v. Gulf Oil Corp.*
   621 F.Supp. 27 (E.D. Pa. 1985) .............................................................................. 20, 21

*Dep't of the Treasury of the State of New Jersey v. Cliffs Natural Resources Inc.*
   2016 WL 6915873 (N.D. Ohio June 30, 2016) ............................................................. 9

*Fischer v. Kmart Corporation*
   2016 WL 7335391 (D. N.J. Nov. 2, 2016) ................................................................... 22

*Fisher Brothers v. Phelps Dodge Industries Inc.*
   604 F.Supp. 446 (E.D. Pa. 1985) .......................................................................... 19, 20

*Gascho v. Global Fitness Holdings, LLC*
   822 F.3d 269 (6th Cir. 2016) ...................................................................................... 20

*Genden v. Merrill Lynch, Pierce, Fenner & Smith*
   700 F.Supp. 208 (S.D.N.Y.1988) ............................................................................... 21

*Gentrup v. Renovo Servs.*
   2011 WL 2532922 (S.D. Ohio June 24, 2011) ........................................................... 16

*Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Michigan Dept. of Natural*
   *Resources, Tp. of Leland, Village of Northport*
   1998 WL 385891 (6th Cir. July 1, 1998) ................................................................. 7, 8

*Hensley v. Eckerhart*
   461 U.S. 424 (1983) ..................................................................................................... 7

*In re Austrian & German Bank Holocaust Litig.*
   80 F.Supp.2d 164 (S.D.N.Y. 2000) ............................................................................ 17

*In re Auto. Parts Antitrust Litig.*
   2017 WL 3525415 (E.D. Mich. July 10, 2017) ...................................................... 4, 22

*In re Broadwing, Inc. ERISA Litig.*
   252 F.R.D. 369 (S.D. Ohio 2006) ......................................................................... 3, 11

*In re Cardinal Health Inc. Sec. Litig.*
   528 F.Supp.2d 752 (S.D. Ohio 2007) ................................................................ 3, 4, 9

*In re Dunn & Bradstreet Credit Services Customer Litig.*
   130 F.R.D. 366 (S.D. Ohio 1990) ....................................................................... 20, 21

*In re Minolta Camera Products Antitrust Litig.*
  666 F.Supp. 750 (D. Md. 1987) ...................................................................................21

*In re Polyurethane Foam*
  168 F.Supp.3d 985 (N.D. Ohio, 2016) ...........................................................................2

*In re Se. Milk Antitrust Litig.*
  2013 WL 2155387 (May 17, 2013).................................................................................22

*In re Southern Ohio Correctional Facility*
  173 F.R.D. 205 (S.D. Ohio 1997) ...........................................................................4, 5, 21

*In re Telectronics Pacing Systems, Inc.*
  137 F.Supp.2d 1029 (S.D. Ohio 2001)....................................................................5, 14, 17

*In re: Whirlpool Corp. Front-loading Washer Products Liability Litig.*
  2016 WL 5338012 (Sept. 23, 2016) ........................................................................14, 19

*In re: Wire Harnesses*
  2017 WL 5664917 (6th Cir. Sept. 15, 2017).................................................................4

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*
  2017 WL 5247538 (S.D. Ohio Nov. 13, 2017) .........................................................3, 9, 14, 16

*Lonardo v. Travelers Indem. Co.*
  706 F.Supp.2d 766 (N.D. Ohio 2010) ...................................................................passim

*Moore v. Aerotek, Inc.*
  2017 WL 2838148 (S.D. Ohio June 30, 2017)...............................................................14

*Ramey v. Cincinnati Enquirer, Inc.*
  508 F.2d 1188 (6th Cir. 1974)..............................................................................passim

*Rawlings v. Prudential-Bache Properties, Inc.*,
  9 F.3d 513 (6th Cir. 1993)...............................................................................4, 5, 8

*Swigart v. Fifth Third Bank*
  2014 WL 3447947 (S.D. Ohio July 11, 2014) ...............................................................22

*United Cent. Bank v. Kanan Fashions, Inc.*
  2012 WL 1409245 (N.D. Ill. Apr. 23, 2012) ...............................................................8

*Van Horn v. Nationwide Prop. & Cas. Inc. Co.*
  436 Fed.Appx. 496 (6th Cir. 2011) .........................................................................4

*Wolfson v. Riley*
  94 F.R.D. 243 (N.D. Ohio 1981).............................................................................20

**<u>Statutes</u>**

12 CFR § 102 ...................................................................................................................1

12 U.S.C. § 2601 ........................................................................................................1, 12

12 U.S.C. § 2605 .....................................................................................................1, 2, 12

**<u>Rules</u>**

Fed. Civ. R. 23 .....................................................................................................6, 15, 18

## INTRODUCTION

Plaintiff RACHEL LIEBER ("Plaintiff" or "Representative Plaintiff") brought this action, individually, and on behalf of a putative class of individuals who submitted to Defendant WELLS FARGO BANK, NA ("Defendant") a qualified written request for information regarding the servicing of their loan but, instead, received from Defendant letters claiming an "active litigation" exception to the request.  Plaintiff alleged that Defendant's conduct violated the Real Estate Settlement Procedures Act ("RESPA")—12 U.S.C. §§ 2601, *et seq.*—and "Regulation X"—codified as 12 CFR § 102—which required Defendant to respond to the requests for information, and do not recognize an "active litigation" exception to this requirement.

Through the efforts of Plaintiff and her counsel at the Zimmerman Law Offices, P.C. ("Zimmerman") and the Dann Law Firm Co., LPA ("Dann") (collectively, "Plaintiff's Counsel" or "Class Counsel"), the parties reached a Settlement Agreement that created a non-reversionary common fund for the benefit of a Settlement Class.  As set forth herein, Settlement Class members who submit a valid claim form are eligible to receive a monetary award ***greater*** than any amount that they could receive at trial.

Plaintiff now respectfully moves the Court for: (1) an award to Plaintiff's Counsel of attorneys' fees and reimbursement of litigation expenses in the amount of $210,000; and (2) a service award in the amount of $7,500 to the Representative Plaintiff.

## I.    THE COURT SHOULD AWARD CLASS COUNSEL $210,000 AS REASONABLE ATTORNEY'S FEES AND LITIGATION EXPENSES.

Pursuant to 12 U.S.C. 2605(f)(3), Plaintiff's attorneys' fees and costs may be assessed against and recovered from Defendant in addition to and separate and apart from any actual and

statutory damages that may be awarded to Plaintiff and Settlement Class members under 12 U.S.C. 2605(f)(1) and (2).

As part of the Settlement, Defendant agreed to pay the Settlement Fund to compensate Settlement Class members, plus a ***separate payment*** of statutory attorneys' fees and litigation expenses in an amount up to $210,000. (SA, §§ IV.b.ii, IV.f.vii.1). Any attorneys' fees and costs awarded by the Court will be paid separate and apart from the Settlement Fund pursuant to 12 U.S.C. 2605(f)(3). (SA, § IV.f.vii.1). Class Counsel agrees to accept any such lesser amount as awarded by the Court for fees and costs (*i.e.*, an amount less than $210,000), and the amount of any such reduction shall be paid *cy pres* to the Legal Aid Society of Cleveland. *Id.*

### A.    Payment of $7,254.58 in Litigation Expenses to Class Counsel is Appropriate and Warranted.

Of the $210,000.00 requested fee, $7,254.58 shall reimburse Class Counsel for the out of pocket expenses that they incurred in this litigation. The Sixth Circuit allows the recovery of pre-settlement litigation costs in the context of class action settlements. *See In re Polyurethane Foam*, 168 F.Supp.3d 985, 1013 (N.D. Ohio, 2016). All expenses that are typically billed by attorneys to paying clients in the marketplace are compensable. *See id.* ("This Court's review confirms these unreimbursed expenses are of the kind typically paid by clients in antitrust litigation.").

In their declarations, Thomas A. Zimmerman, Jr. and Marc E. Dann list the unreimbursed litigation expenses that they incurred in prosecuting this matter. *See* Declaration of Thomas A. Zimmerman, Jr. ("Zimmerman Decl."); Declaration of Marc E. Dann ("Dann Decl."). Class Counsel respectfully request Court approval for the reimbursement of $7,254.58 in appropriately documented out-of-pocket litigation expenses. Zimmerman Decl. ¶ 35; Dann Decl. ¶ 31. Class Counsel's incurrence of litigation expenses was necessary to the diligent prosecution of the

2

Settlement Class's claims, and these expenses are of the kind typically paid by clients in class action litigation of this type. *Id.* Because Class Counsel incurred these expenses with absolutely no assurance of recovery, they were highly motivated to proceed in the most cost-effective manner possible. *Id.*  As such, Class Counsel is entitled to a reimbursement of these costs.

**B.      The Court Engages in a Two-Part Test When Assessing the Reasonableness of a Fee Petition.**

"When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (citing *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007)).  "First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach."  *Id.* As set forth herein, calculating attorneys' fees based on Class Counsel's **lodestar** is the preferable, appropriate, and reasonable method to calculate fees in this case.

The second step in a court's determination of the reasonableness of an attorney's fee is analysis of the six (6) factors set forth in the Sixth Circuit's decision in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).  *See Kimber Baldwin*, 2017 WL 5247538 at *5.  The *Ramey* court identified six factors for consideration in determining the reasonableness of a fee award: (1) the "value of the benefit rendered" to the class; (2) "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others[;]" (3) whether the attorney's services were "undertaken on a contingent fee basis[;]" (4) the "value of the services on an hourly basis;" (5) the "complexity of the litigation;" and (6) the "professional skill and standing of counsel involved on both sides." *Ramey,* 508 F.2d at 1196; *see also In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) (internal citations omitted).

As more fully developed below, all six (6) of these *Ramey* factors weigh in favor of awarding Class Counsel the requested fee.

**C.      It is Reasonable and Appropriate to Award Attorneys' Fees Independently from the Common Fund Based on the Lodestar Method.**

The first step in a court's analysis of the reasonableness of an attorney's fee is to "determine the method of calculating the attorneys' fees[]" and apply "either the percentage-of-the-fund approach or the lodestar method." *In re Auto. Parts Antitrust Litig.*, 2017 WL 3525415, at *1 (E.D. Mich. July 10, 2017), *appeal dismissed sub nom. In re: Wire Harnesses*, 2017 WL 5664917 (6th Cir. Sept. 15, 2017) (citing *In re Cardinal Health*, 528 F.Supp.2d at 760; *Van Horn v. Nationwide Prop. & Cas. Inc. Co.*, 436 Fed.Appx. 496, 498 (6th Cir. 2011)).

Here, it is reasonable that Class Counsel's fee petition will utilize the lodestar method. The Sixth Circuit has recognized "that use of *either* the lodestar or percentage of the fund method of calculating attorney's fees is appropriate[,]" and "determination of which method is appropriate in any given case will depend upon its circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (emphasis added) (upholding a district court's award of attorney's fees using the lodestar method).  "At bottom, the court must ensure that class counsel are fairly compensated for the amount of work done as well as the results achieved." *In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997) (citing *Rawlings*, 9 F.3d at 516) (awarding class counsel fees through use of the lodestar method).  In *Rawlings*, the Sixth Circuit explained how a court must use its discretion to determine which method is more appropriate on a case-by-case basis, as follows:

> When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved….The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that district

4

> courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.

*Rawlings*, 9 F.3d at 516 (internal citations omitted).

Courts in this circuit have found the lodestar method to be superior to the percentage of the fund method when, like here, "the monetary benefit to the class is relatively low compared to the total benefits, both non-economic and economic, the class received[,]" and when "Class Counsel has already reasonably discounted the 'lodestar' to account for any duplication of work by the numerous attorneys working on [the] case." *See In re Southern Ohio Correctional*, 173 F.R.D. at 217 (awarding attorney's fees through use of the lodestar method). Courts have recognized several benefits of using the lodestar method to calculate attorney's fees, finding that the lodestar method is "a very accurate measurement of the actual services provided by [class counsel] to the Class[,]" that "the Court is given the opportunity to review the financial data by the Parties[,]" and that it is "a simple and straight forward formula of hours worked times the hourly rate charged[.]" *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 1029, 1044 (S.D. Ohio 2001) (awarding fees through use of the lodestar method).

While the percentage method is preferable in cases where attorneys' fees are to be awarded ***out*** of a common settlement fund, the Settlement Agreement here provides that attorneys' fees shall be awarded ***separately*** from the Settlement Fund and shall not decrease or otherwise affect the monetary relief awarded to Settlement Class members.

This fee structure is reasonable and was recently upheld by this Court in in *Lonardo*, in which "[t]he attorney's fees and reimbursement of expenses, as awarded by the Court, shall be paid by the Defendants, without depleting the settlement payments to be made to the Settlement Class." *Lonardo v. Travelers Indem. Co.*, 706 F.Supp.2d 766, 776 (N.D. Ohio 2010). In *Lonardo*, like this case, class counsel's fees were not taken out of the common fund of class

5

relief, but rather, were paid to class counsel independently based on counsel's lodestar. *Id.* at 785-86

In *Lonardo*, an objector argued that awarding attorney's fees separately from a common class fund "'decouples' Class Counsel's interests from the interests of the class" and "'reduces the Court's incentive to carefully scrutinize the fee for unreasonableness[.]'" *Id.* at 785 (internal citations omitted). The objector asked the Court to create a "bright-line rule" rejecting all settlement agreements where attorney's fees are negotiated or paid separately from the common relief awarded to class members. *Id.* However, the Court rightfully held that "there is no legal authority supporting the bright line rule" and that such a rule "is neither necessary nor appropriate[.]" *Id.* at 786. The Court stated it could not find a single case "where a class action settlement has been rejected on these grounds[.]" *Id.* at 785.

Further, the *Lonardo* Court found that allowing attorneys' fees to be awarded independently from the common fund may—based on the circumstances of an individual case— better serve society's interest in rewarding Class Counsel's efforts in bringing claims on behalf of the Class, as follows:

> [O]ne of the fundamental principles of class action litigation is that it provides an incentive to pursue recovery for tortious conduct that would otherwise go unchecked because the individual harm to a potential plaintiff is too small to justify the cost of litigation. Collective action is the best, and, in many cases, the only feasible, way to redress the harm on an individual basis and discourage similar conduct in the future. Of course, class actions depend on class counsel—that is why the Court's duty to ensure that class counsel is fairly compensated under the circumstances of the case is such an important part of the Court's Rule 23(e) responsibilities. In many cases, [Objector's] approach would result in fair compensation for class counsel. In other cases, his approach would significantly undervalue class counsel's service to the class and to the public.

*Lonardo*, 706 F.Supp.2d at 791; *see also id.* at 817, n. 22.

Ultimately, the *Lonardo* Court overruled the objection, granted final approval of the settlement agreement, and awarded class counsel the full amount of fees requested.  *Lonardo*, 706 F.Supp.2d at 786, 804.

Similarly, in this case it is appropriate to award Class Counsel fees independent from the common fund based on Class Counsel's lodestar.  Disallowing this fee arrangement would "significantly undervalue [Class Counsel]'s service to the class and to the public."  *See Lonardo*, 706 F.Supp.2d at 791.  Class Counsel has vigorously litigated this matter for over a year and should be compensated for the work that they performed.  As more fully set forth below, Settlement Class members' individual monetary damages are small, and the only monetary harm alleged in the Complaint is "postage and attorney's fees" (First Amended Complaint, at ¶¶ 24, 28, 34, 28, 51, 63).  Nevertheless, the Settlement provides significant monetary relief to Settlement Class members.  The significant benefits that Class Counsel have achieved on behalf of the Settlement Class support that Class Counsel's requested fee is reasonable.

**D.    The Requested Fee is Especially Reasonable Because It Utilizes a Negative Multiplier.**

In order to calculate attorneys' fees based on Class Counsel's lodestar, Class Counsel has provided task-based summaries of the work that they performed in this case.  These summaries obviate the onerous judicial burden of wading through hundreds of pages of time records, and are a commonplace and well-recognized tool for the Court to assess the reasonableness of a requested fee award in class action proceedings like this litigation.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983) (Class counsel "is not required to record in great detail how each minute of his time was expended," but should "identify the general subject matter of his time expenditures."); *Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Michigan Dept. of Natural Resources, Tp. of Leland, Village of Northport*, 1998 WL 385891, at *6 (6th

7

Cir. July 1, 1998) (quoting same); *see also United Cent. Bank v. Kanan Fashions, Inc.*, 2012 WL 1409245, at *8 (N.D. Ill. Apr. 23, 2012) ("We agree with plaintiff that it was not required to provide the Court with actual billing records, and we found the billing summaries adequate for purposes of resolving the fee petition."). As such, the summaries provided by Class Counsel are reasonable and adequate evidence of the number of hours that Class Counsel performed in this case.[1]

To date, the attorneys and paralegals at Zimmerman have performed 596.8 hours of work on this case, and the attorneys and paralegals at Dann have performed 254.10 hours of work on this case. Zimmerman Decl. ¶¶ 22-23; Dann Decl. ¶¶ 20-21. In their declarations, Class Counsel provide the standard hourly rates for each of the attorneys and paralegals at their respective firms. Zimmerman Decl. ¶¶ 25-33; Dann Decl. ¶¶ 23-29. As more fully set forth in the declarations, the hourly rates are reasonable, consistent with regional market rates, and have been approved by state and federal courts alike. *See id.* Applying the number of hours worked to the respective hourly rates, Zimmerman's lodestar is $249,896.50, and Dann's lodestar is $91,097.50. Zimmerman Decl. ¶¶ 22-24; Dann Decl. ¶¶ 20-22. Therefore, Class Counsel's actual lodestar in this case amounts to $340,994. The $210,000 request for fees and expenses is *less* than the value of Class Counsel's services on an hourly basis.

In calculating reasonable attorney's fees, either when awarding fees through use of the lodestar method or when performing a lodestar cross-check on a percentage of the fund, it is common practice for district courts in this circuit to multiply class counsel's lodestar by a positive multiplier in order to increase the fee amount. *See, e.g.*, *Rawlings*, 9 F.3d at 517 (approving a multiplier of 2); *Lonardo*, 706 F.Supp.2d at 795-96 (approving a multiplier of 1.3);

---

[1] Should the Court deem it necessary to review all of Class Counsel's billing records and individual time entries for all of the work that they performed in this case, Class Counsel can make these documents available to the Court for *in camera* review. *See United Cent. Bank*, 2012 WL 1409245, at *8.

*Dep't of the Treasury of the State of New Jersey v. Cliffs Natural Resources Inc.*, 2016 WL 6915873, at *3 (N.D. Ohio June 30, 2016) (finding a multiplier of 2.24 was reasonable when performing a lodestar cross-check); *In re Cardinal Health*, 528 F.Supp.2d at 767–68 (approving a multiplier of 6).

Here, however, awarding Class Counsel the requested fee would require a ***negative*** lodestar multiplier (*i.e.*, -.60).  In essence, Class Counsel has agreed to receive less than full compensation for the number of hours that they worked in this litigation.  The negative multiplier to be applied to Class Counsel's lodestar warrants that Class Counsel's fee petition will be more than reasonable in this case.  *See Kimber Baldwin Designs*, 2017 WL 5247538, at *6 ("Dividing the amount they seek ($150,000) by the lodestar results in a negative multiplier (-.73), which demonstrates that the fee sought is reasonable.").

### E.   The Benefits to Settlement Class Members are the Result of Class Counsel's Vigorous Litigation of this Case.

Class Counsel's requested fee award utilizing a negative multiplier is especially reasonable given the great amount of time and effort that Class Counsel has dedicated to this litigation.  In the time since Plaintiff and Class Counsel first initiated this action in November 2016, they have vigorously litigated this matter on behalf of the Settlement Class.

Since Defendant filed its Answer to Plaintiff's First Amended Complaint on March 30, 2017, the parties have been engaged in extensive Class discovery.  (Dkt. # 21).  The Class discovery included extensive written discovery: (a) Plaintiff issued 3 sets of interrogatories, document requests, and requests to admit facts to Defendant; (b) Plaintiff responded to 2 sets of interrogatories, document requests, and requests to admit facts issued by Defendant; (c) Plaintiff produced documents, and analyzed over 17,000 documents produced by Defendant;

(d) Plaintiff and Defendant's corporate representative gave depositions; and (e) Plaintiff filed 2 fully-briefed motions to compel discovery against Defendant.

On October 3, 2017, Plaintiff filed her *Renewed Motion for Class Certification* ("Motion for Class Certification"), and Defendant filed its response in opposition to the Motion for Class Certification on October 16, 2017. (Dkt. # 49, 52).

Before the Motion for Class Certification was fully briefed, the parties attended a mediation conference presided by Magistrate Judge Greenberg on October 25, 2017. (Dkt. # 54). During that mediation conference, the parties engaged in extensive arm's length negotiations regarding a settlement in this matter, and agreed to return for an additional mediation conference that was held on November 2, 2017. (Dkt. # 54). Ultimately, at the November 2, 2017 mediation conference, the parties agreed to the terms of the Settlement Agreement, wherein which the parties agreed to settle Plaintiff's claims on a class-wide basis.

Class Counsel has spent significant time and effort litigating this case, and the positive results achieved for Settlement Class members are the direct result of Class Counsel's work on this case. Therefore, Class Counsel should be rewarded for their efforts in this case and granted the requested $210,000 fee.

**F.    The *Ramey* Factors Support Awarding the Requested Fee.**

In *Ramey*, the Sixth Circuit identified six factors for consideration in determining the reasonableness of a fee award: (1) the "value of the benefit rendered" to the Class; (2) "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others[;]" (3) whether the attorney's services were "undertaken on a contingent fee basis[;]" (4) the "value of the services on an hourly basis;" (5) the "complexity of the litigation;" and (6) the

"professional skill and standing of counsel involved on both sides."  *Ramey,* 508 F.2d at 1196; *see also In re Broadwing*, 252 F.R.D. at 381 (internal citations omitted).

Here, each of the *Ramey* factors weigh in favor of awarding Plaintiffs' Counsel their requested fee.

### 1.     The Settlement Provides Significant Benefits to the Settlement Class.

The first *Ramey* factor to be considered by the court is "the value of the benefit rendered" to members of the Settlement Class.  *Ramey,* 508 F.2d at 1196.  Here, although Settlement Class members' individual monetary damages are small—indeed, the only monetary harm alleged in the Complaint is "postage and attorney's fees"—Class Counsel achieved significant relief on behalf of Settlement Class members.  As set forth herein, the Settlement Agreement provides significant benefits to the Settlement Class.

Pursuant to the Settlement Agreement, Defendant has created a common fund of $215,000 (the "Settlement Fund").  (SA, § II.ff).  Administrative costs and expenses applicable to settlement administration, the costs of class notice, and any service award granted to Representative Plaintiff—but ***not*** any award of attorneys' fees and costs—shall be deducted from the Settlement Fund, and the remaining amounts shall be preserved as monetary relief for Settlement Class members. (SA, § IV.b.ii)  All Settlement Class members who submit a claim form will receive a cash payment from the Settlement Fund. (SA, § IV.b.ii.2).  The maximum amount that a Settlement Class member may receive from the Settlement is $3,500, but, subject to the claim-in rate, the Settlement Administrator may decrease the cash amounts to Settlement Class members on a *pro rata* basis.[2]  (SA, § IV.b.ii.2).

---

[2] After deducting from the Settlement Fund the administrative costs and expenses applicable to settlement administration, the costs of class notice, and any service award granted to Representative Plaintiff, if the amount of money remaining in the Settlement Fund is greater than the amount required to pay the maximum $3,500 cash payment to every Settlement Class member who submits a valid claim form, then

In her complaint against Defendant, Plaintiff—individually and on behalf of Class members—sought monetary damages in the form of "postage" spent to mail a request information from Defendant, attorneys' fees, if any, that a Class member may have incurred to assist the Class member in requesting the information, and statutory damages provided under RESPA. (FAC, at p.11, 14).  However, the postage costs were nominal (*i.e.*, the cost of a postage stamp), and very few Class members would have incurred any attorneys' fees in connection with their request for information. RESPA provides that any statutory damages awarded for noncompliance with its requirements can only be given "in an amount not to exceed $2,000." 12 USCA § 2605 (f)(1)(B).  Therefore, the $3,500 cash payment provided in this settlement affords Settlement Class members with potential monetary relief ***greater*** than what they could receive at trial.

In addition to the cash payment that Settlement Class members will receive, the Settlement Agreement also provides non-monetary benefits.  RESPA was enacted in part because "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process[.]" 12 U.S.C. § 2601 (a).  Settlement Class members submitted to Defendant "qualified written request[s]" for information relative to their federal mortgage loans, and, as such, Settlement Class members had a right to receive from Defendant the information that they lawfully requested.  *See* 12 U.S.C. §§ 2605(e)(1)-(e)(2)(C)(ii).  The Settlement Agreement effectuates the purpose of RESPA because, although the monetary damages suffered by individuals are small, Settlement Class members vindicated their rights to receive information regarding their federal mortgage loans.

---

the remainder shall be paid *cy pres* to the Legal Aid Society of Cleveland.  (SA, § IV.b.ii.2). None of the Settlement Fund shall revert back to Defendant under any circumstances.

As part of the Settlement, Defendant represented that its corporate policy is to comply with all of the provisions of RESPA related to responding to qualified written requests, requests for information, and notices of error, including in situations where its Borrower is in active litigation, active mediation, or active bankruptcy.  (SA, § I.g).  This new corporate policy ensures that Defendant will provide the information requested by its Borrowers in the future, and Defendant will no longer assert an "active litigation exception" as a basis to withhold the requested information.

As such, the Settlement Agreement provides all Settlement Class members with significant monetary compensation, as well as lasting non-monetary benefits. These favorable results are directly attributable to Class Counsel, and Class Counsel should be rewarded for the benefits they achieved for Settlement Class members.

Moreover, the Settlement's tremendous benefits to Settlement Class members supports that the fee structure of the Settlement Agreement—wherein which Class Counsel's fee will be awarded separately from the common fund based on Class Counsel's lodestar and applying a negative multiplier—is the most reasonable and appropriate means to compensate Class Counsel in this case.  Well over a year after active litigation, Class Counsel's current lodestar for this case is $340,994.  As such, re-structuring the Settlement Agreement such that Class Counsel only receives a percentage of the total Class recovery would be woefully insufficient to compensate Class Counsel for the work that they performed and the novel legal issues that they pursued on behalf of the Class.  The Settlement Agreement, on the other hand, provides Settlement Class members with significant monetary relief plus Defendant's future practice changes, while still awarding Class Counsel adequate compensation, albeit *less* than the full amount of their lodestar.

As such, the first *Ramey* favor weighs in favor of awarding the requested attorney's fee.

13

## 2.     The Societal Interest Supports Rewarding Class Counsel.

The second *Ramey* factor is "society's stake in rewarding attorneys who produce" significant benefits for class members and "maintain[ing] an incentive to others" to do the same. *Ramey*, 508 F.2d at 1196.  This second factor also weighs in favor of awarding Class Counsel the requested fee.  "Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling...small claimants to pool their claims and resources." *In re Telectronics*), 137 F.Supp.2d at 1043.  Class action settlements offer "a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action cases enable this." *Kimber Baldwin*, 2017 WL 5247538, at *6 (citing *Moore v. Aerotek, Inc.*, 2017 WL 2838148 (S.D. Ohio June 30, 2017) (citation omitted)).  As such, "[s]ociety has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Id.*; *see also In re: Whirlpool Corp. Front-loading Washer Products Liability Litig.*, 2016 WL 5338012, at *23 (Sept. 23, 2016) ("Ultimately, the public has an interest in compensating Class Counsel here, because recoveries in this case are far too small if pursued on an individual basis, leaving only contingent-fee class actions as a mechanism to pursue viable claims.").

Here, the Settlement Agreement benefits the public interest because Plaintiff and Class Counsel have allowed Settlement Class members to receive compensation for claims that they ordinarily would not be willing to pursue individually against Defendant.  *See Kimber Baldwin*, 2017 WL 5247538 at *6 (finding that but for the settlement reached by class counsel, "[m]any of the class members would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant").  Indeed, the only monetary harm that Settlement Class members suffered was the cost of a postage stamp and

14

possibly attorneys' fees. However, the potential monetary relief provided to each Settlement Class member under the Settlement is $3,500. Additionally, as set forth above, the efforts of Plaintiff and Class Counsel have also affected Defendant's unlawful business practices that were harmful to the public, such that Defendant will no longer refuse to produce requested information based on a non-existent "active litigation exception". As such, Settlement Class members, as well as the general public, have greatly benefited from Class Counsel's efforts, and society has an interest in rewarding Class Counsel for their effort in bringing this cause of action.

The public interest supports the well-accepted fee structure provided under the Settlement Agreement, in which Class Counsel shall receive a fee award independently from the Settlement Fund. In this particular case, Class Counsel negotiated for the creation of a common Settlement Fund that provides Settlement Class members with significant monetary compensation. Yet, limiting Class Counsel's fee award to a percentage of this Settlement Fund would result in a fee that is only a fraction of their lodestar in this case. Without an adequate fee award, class action attorneys would have little incentive to bring causes of action, like this one, that may require significant time and effort pursuing small monetary damages on behalf of class members. *See Lonardo*, 706 F.Supp.2d at 791 ("[O]ne of the fundamental principles of class action litigation is that it provides an incentive to pursue recovery for tortious conduct that would otherwise go unchecked because the individual harm to a potential plaintiff is too small to justify the cost of litigation….that is why the Court's duty to ensure that class counsel is fairly compensated under the circumstances of the case is such an important part of the Court's Rule 23(e) responsibilities.").

Society has an interest in rewarding Class Counsel for the tremendous monetary and equitable benefits that they achieved on behalf of Settlement Class members, as well as

15

recognizing the time and effort that Class Counsel actually expended in this contentious and complex litigation. These interests are satisfied by awarding Class Counsel attorneys' fees independently from the Settlement Fund and calculated using the lodestar method. As such, the second *Ramey* factor weighs in favor of awarding Class Counsel the requested fee.

### 3. The Services of Plaintiffs' Counsel Were Undertaken on a Contingent Fee Basis.

The third *Ramey* factor is whether the attorney's services "were undertaken on a contingent fee basis." *Ramey*, 508 F.2d at 1196. The fact that Plaintiff's Counsel took this case on a contingent fee basis weighs strongly in an award of attorney's fees and costs. *See Kimber Baldwin*, 2017 WL 5247538, at *6 (awarding attorney's fees after class counsel "took this case solely on a contingency fee basis and were prepared to make an investment with the very real possibility of an unsuccessful outcome and no fee at all[,]" "advanced all costs incurred in this case[,]" and "have not received any compensation for the work they have performed thus far"); *see also Gentrup v. Renovo Servs.*, 2011 WL 2532922 (S.D. Ohio June 24, 2011) (finding the fact that class counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of granting the requested fee).

Here, Class Counsel took this case on a contingent fee basis, advanced all litigation costs incurred in this case, and, to date, have not received any compensation for their services representing the Class. Zimmerman Decl. ¶¶ 37-39. Class Counsel took a significant risk by undertaking all services on a contingent fee basis, and the third *Ramey* factor weighs in favor of awarding the requested fee.

16

4.    **The Value of the Services on an Hourly Basis Support Awarding the Requested Fee.**

The fourth *Ramey* factor is "the value of the services on an hourly basis." *Ramey*, 508 F.2d at 1196. As set forth above, the value of Class Counsel's services on an hourly basis totals $340,994. Zimmerman Decl. ¶¶ 22-24; Dann Decl. ¶¶ 20-22. Additionally, Class Counsel has already paid $7,254.58 in unreimbursed litigation costs and expenses. Zimmerman Decl. ¶ 35; Dann Decl. ¶ 31. Therefore, the $210,000 request for fees and expenses is significantly *less* than the value of Class Counsel's services on an hourly basis. The fourth *Ramey* factor weighs in favor of awarding Class Counsel the requested fee, especially considering the fact that the requested fee will result in a negative multiplier.

5.    **The Litigation is Significantly Complex.**

The fifth *Ramey* factor is "the complexity of the litigation." *Ramey*, 508 F.2d at 1196. This factor similarly weighs in favor of awarding Class Counsel the requested fee. "Generally speaking, '[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Telectronics*), 137 F.Supp.2d at 1013 (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000)).

This case is no exception, as the litigation is significantly complex and presented numerous substantial risks and uncertainties that could have prevented any recovery whatsoever. One of the most notably complex issues of this case was the question of class certification. Defendant vigorously opposed class certification throughout this litigation, and filed a motion seeking to strike all class allegations from Plaintiff's First Amended Complaint (*See* "Motion to Strike," Dkt. # 27). Defendant contended that individual questions of law and fact amongst putative class members prohibited class certification. After Plaintiff produced in discovery the

17

names of all putative class members known to Plaintiff, Defendant argued that it had defenses unique to eight (8) of the putative class members that Plaintiff disclosed. (*See* Motion to Strike, Dkt. # 27, pp.3-4).  Regarding these Class members, Defendant argued that it had provided them with a partial response that was adequate under RESPA, that the information requested by each Class member was duplicative of information that Defendant had already provided to them, that the information requested by the Class member was for the Class member's defense to the foreclosure and not regarding the servicing of the loan, that Defendant had reasonable objections to the Class member's request for information, that the Class member was not a "borrower" under RESPA, and other various defenses.  (*See, generally*, Motion to Strike, Dkt. # 27). Therefore, Defendant argued that Plaintiff could not satisfy the commonality, typicality, or adequacy requirements of Fed. Civ. R. 23.  Had Defendant succeeded in these arguments, Settlement Class members would not have been entitled to any recovery whatsoever.

To contrast, the Settlement Agreement provides Settlement Class members with substantial monetary compensation, plus changes to Defendant's business practices. Thus, Settlement Class members will benefit by receiving compensation under the Settlement Agreement, rather than undergoing years of uncertain and burdensome litigation. *See Gilbert v. Abercrombie & Fitch, Co.*, 2016 WL 4159682, at *9 (S.D. Ohio Aug. 5, 2016), *report and recommendation adopted,* 2016 WL 4449709 (S.D. Ohio Aug. 24, 2016) ("In the absence of a settlement, continued litigation would span years, requiring fact discovery, expert discovery, formal class certification, and other motion practice, including post-trial motions and appeals; that litigation would be both extensive and costly….Consideration of this factor therefore weighs in favor of approving the *Stipulation and Settlement Agreement*.").  As such, the fifth *Ramey* factor weighs in favor of awarding Class Counsel the requested fee.

6.    **The Professional Skill and Standing of All Counsel Supports Awarding Class Counsel the Requested Fee.**

The last *Ramey* factor is "the professional skill and standing of counsel involved on both sides."  *Ramey*, 508 F.2d at 1196.  This factor strongly weighs in favor of awarding Class Counsel the requested fee because Class Counsel is highly experienced in the fields of consumer and class action litigation. *See*, Zimmerman Decl. ¶¶ 4-15; Dann Decl. ¶¶ 9-18.  It is evident that the positive results provided for Settlement Class members under the Settlement Agreement are attributable to Class Counsel's skill and expertise.  *See In re: Whirlpool*, 2016 WL 5338012 at *24 ("[The] Court appreciates that the good results in this case are attributable directly to Class Counsel's skill and reputation.").

Additionally, the skill and standing of defense counsel support awarding Class Counsel the requested fee.  Defendant is represented by Thompson Hine, LLP, a highly-respected nationwide firm in the field of civil defense and class action litigation. The primary attorney representing Defendant in this case, Scott King, is a seasoned litigator with decades of experience in the legal and factual issues similar to those in this case.  *See http://www.thompsonhine.com/professionals/king-scott.* Indeed, both sides have actively litigated this case and ultimately came to an agreement that is fair, reasonable, and adequate.  The professional skill, standing, experience, and reputation of all counsel supports the requested fee.

In assessing the reasonableness of class action settlements, courts repeatedly and explicitly defer to the judgment of experienced counsel who have conducted arms-length negotiations.  *See, e.g., Blank v. Talley Industries, Inc.*, 64 F.R.D. 125, 132 (S.D. N.Y. 1974) (recognizing that a factor "entitled to substantial weight is that the settlement bears the imprimatur of seasoned and experienced counsel"); *Fisher Brothers v. Phelps Dodge Industries Inc.*, 604 F.Supp. 446, 452 (E.D. Pa. 1985) (finding "the professional judgment of counsel

19

involved in the litigation is entitled to great weight"); *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) (finding the fact that "Class counsel and representatives approved the settlement agreement" weighed in favor of granting final approval of a class action settlement).

Here, when negotiating the Settlement Agreement, Class Counsel and defense counsel both determined that—based on the small monetary loss suffered by Plaintiff and Settlement Class members, the potential for significant monetary recovery under the Settlement Agreement, the time that Class Counsel spent litigating this case, and other relevant factors contemplated by the parties—the fee structure provided in the Settlement Agreement is the most appropriate means to compensate Class Counsel for the work that they performed without subtracting from the relief awarded to Settlement Class members. Indeed, Magistrate Judge Greenberg agreed, and he actively mediated the terms of the Settlement, including this fee structure.

As such, all six (6) *Ramey* factors support awarding Class Counsel attorneys' fees and expenses in the amount of $210,000.

## II. PAYMENT OF $7,500 AS A SERVICE AWARD TO THE REPRESENTATIVE PLAINTIFF IS APPROPRIATE AND WARRANTED.

As part of the Settlement, Defendant agreed to pay a service award to the Representative Plaintiff in an amount up to $7,500. (SA, § IV.f.vii.2). The service award will be paid out of the Settlement Fund. (SA, §§ I.ee, IV.f.iii).

"Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent." *In re Dunn & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (citing *Wolfson v. Riley,* 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.,* 621 F.Supp. 27,

32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litig.,* 666 F.Supp. 750, 752 (D. Md. 1987)).

It is appropriate to award Plaintiff a service award in this case.  In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case."  *In re Southern Ohio Correctional*, 175 F.R.D. at 273 (citing *In re Dunn & Bradstreet,* 130 F.R.D. at 374; *Genden v. Merrill Lynch, Pierce, Fenner & Smith,* 700 F.Supp. 208, 210 (S.D.N.Y.1988); *Bogosian,* 621 F.Supp. at 32; *White v. National Football League,* 822 F.Supp. 1389, 1406–07 (D. Minn. 1993)).  Class Counsel's declaration sets forth the amount of time and effort that the Representative Plaintiff has devoted to this litigation. Dann Decl. ¶¶ 33-43.

For example, the Ms. Lieber was the impetus for this litigation, as she came forward and sought out legal counsel to assist with her attempts to obtain information from Defendant. She believes that Defendant should have provided the requested information instead of asserting an "active litigation exception" that does not exist under the statute. Desiring that Defendant be held accountable for its unlawful refusal to provide information to its borrowers, Ms. Lieber realized that this objective could best be achieved through the vigorous prosecution of a class action against Defendant. Thus, Ms. Lieber assumed the responsibilities of becoming a named plaintiff and proposed class representative. In that role, Ms. Lieber—as typically expected of a class plaintiff—assembled all documents and other materials relevant to his case, reviewed multiple court filings, engaged in numerous long conversations with Class Counsel regarding case issues and strategies, responded to many extensive (arguably intrusive) document requests from Defendant, voluntarily subjected herself to several hours of deposition questioning, and

21

personally attended both mediation sessions with Magistrate Judge Greenberg, all the while keeping herself generally apprised of the status of the case.  Ms. Lieber willingly undertook all of the foregoing responsibilities with the full understanding that, should a settlement be achieved, she would be entitled to no more advantageous treatment or compensation than any other similarly situated Class member, save the possibility of a service award to be determined in fact and amount entirely in the discretion of the Court.  Dann Decl. ¶¶ 33-43.

The proposed service award in this case neither involves an *ex ante* agreement between Representative Plaintiff and Plaintiffs' Counsel, nor is it conditioned on Representative Plaintiff's support for the Settlement Agreement.  Dann Decl. ¶ 41.

An award of $7,500 is reasonable.  *See Fischer v. Kmart Corporation*, 2016 WL 7335391, at *4 (D. N.J. Nov. 2, 2016) ("The Court finds that payment of the Enhancement Awards of [$]7,500.00 each to Class Representatives…is warranted and approved.  The Court finds that these amounts are reasonable and appropriate.").  Indeed, district courts in this Circuit have approved service awards far greater than $7,500.  *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, 2016 WL 8201516, at *2 (E.D. Mich. Dec. 28, 2016) (awarding $10,000 to class representatives); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 to class representatives); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (May 17, 2013) (awarding $10,000 to class representatives).

Representative Plaintiff's extensive involvement in this litigation warrants compensation above and beyond the compensation of other Settlement Class members.  Further, like Class Counsel, Representative Plaintiff should be rewarded for her role in bringing this cause of action, negotiating for the creation of a common settlement fund, effecting changes to Defendant's business practices, and achieving significant benefits for Settlement Class members.  As such,

the requested service award is reasonable, and the Court should award $7,500 to the Representative Plaintiff.

## <u>CONCLUSION</u>

For the foregoing reasons, Representative Plaintiff respectfully requests that this Honorable Court enter an Order, as follows:

(1)     Award the separate payment of $210,000 to Class Counsel as attorneys' fees and reimbursed litigation expenses;

(2)     Award Representative Plaintiff the amount of $7,500 as a service award; and

(3)     Any other relief the Court deems just under the circumstances.

Date: February 19, 2018                 Respectfully submitted,

s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr.
(admitted *pro hac vice*)
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020
(312) 440-4180 (fax)
*tom@attorneyzim.com*

Marc E. Dann 0039425
William C. Behrens 0093031
THE DANN LAW FIRM CO., LPA
P.O. Box. 6031040
Cleveland, Ohio 44103
(216) 373-0539
(216) 373-0536 (fax)
*notices@dannlaw.com*

*Settlement Class Counsel*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 19, 2018, the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.


                  /s/ Thomas A. Zimmerman, Jr.

                  Thomas A. Zimmerman, Jr.
                  (admitted *pro hac vice*)
                  ZIMMERMAN LAW OFFICES, P.C.